UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

**ANDREA TOLEDO,**

                           Plaintiff,

      -against-

**UNIBUD RESTORATION CORP.,
BREND RESTORATION LLC,
BREND RESTORATION SERVICES INC.,
PAVARINI MCGOVERN, LLC, and CARLOS
URIBE, individually,**

                         Defendants.

----------------------------------------------------------------------X

Case No: 21-cv-882

**<u>AMENDED COMPLAINT</u>**

Plaintiff Demands A Trial By Jury

Plaintiff, ANDREA TOLEDO (hereinafter referred to as "TOLEDO" and/or "Plaintiff"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant UNIBUD RESTORATION CORP. (hereinafter referred to as "UNIBUD"), Defendant BREND RESTORATION LLC (hereinafter referred to as "BREND"), Defendant BREND RESTORATION SERVICES INC. (hereinafter referred to as "BRS"), Defendant PAVARINI MCGOVERN, LLC (hereinafter referred to as "PAVARINI"), (hereinafter collectively referred to as "Defendants") and CARLOS URIBE, individually (hereinafter referred to as "URIBE" upon information and belief, as follows:

<u>**NATURE OF CASE**</u>

Plaintiff, ANDREA TOLEDO, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court

pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, hostile work environment, sexual harassment and constructive discharge, violations of New York's Wage Theft Prevention Act, and intentional and negligent infliction of emotional distress by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. On or about October 21, 2019, Plaintiff ANDREA TOLEDO submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2019-05894.

4. The charge of discrimination Plaintiff filed with the EEOC explicitly names UNIBUD RESTORATION CORP., BREND RESTORATION LLC, BREND RESTORATION SERVICES INC. and PAVARINI MCGOVERN, LLC as Respondents.

5. On or about November 6, 2020, Plaintiff ANDREA TOLEDO received a Right to Sue Letter from the EEOC for federal charge number 520-2019-05894.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

7. Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## **PARTIES**

1.  At all times material, Plaintiff Andrea Cadena Toledo ("TOLEDO" or "PLAINTIFF") was and is an individual female, residing in the State of New York, Queens County.

2.  At all times material, Defendant UNIBUD RESTORATION CORP. (hereinafter referred to as "UNIBUD") was and is a domestic business corporation duly existing by the virtue and laws of the state of New York.

3.  At all times material, Defendant BREND RESTORATION LLC (hereinafter referred to as "BREND") was and is a domestic limited liability corporation duly existing by the virtue and laws of the state of New York.

4.  At all times material, Defendant BREND RESTORATION SERVICES INC. (hereinafter referred to as "BRS") was and is a domestic limited liability corporation duly existing by the virtue and laws of the state of New York.

5.  Upon information and belief, BREND and BRS are alter egos, and are both referred to herein collectively as "BREND" and/or "BRS"

6.  At all times material, Defendant PAVARINI MCGOVERN, LLC (hereinafter referred to as "PAVARINI") was and is a foreign limited liability corporation licensed to do business in the state of New York duly existing by the virtue and laws of the state of Delaware.

7.  At all times material, Defendants were Plaintiff's employer.

8. At all times material, Defendant CARLOS URIBE ("URIBE") was a Supervisor/Foreman jointly employed by Defendants, UNIBUD, BREND, BRS and PAVARINI, and was Plaintiff's direct supervisor.

9. At all times material, Defendant URIBE held the authority to hire and fire Plaintiff and direct the job duties of Plaintiff.

10. At all times material, ROBERT ZAWADSKI ("ZAWADSKI") was and still is one of the owners of Defendant UNIBUD, and held the authority to hire and fire Plaintiff and direct the job duties of Plaintiff.

11. At all times material, KRZYSTOF ZAGROBA ("ZAGROBA") was and still is one of the owners of Defendant UNIBUD and held the authority to hire and fire Plaintiff and direct the job duties of Plaintiff.

12. At all times material, CESAR CASTIBLANCO was a Foreman jointly employed by Defendants, UNIBUD, BREND, BRS and PAVARINI, and was Plaintiff's supervisor, and held the authority to hire and fire Plaintiff and direct the job duties of Plaintiff.

## STATEMENT OF FACT

13. Around April 1, 2019, Defendants hired Plaintiff as a laborer following a telephone interview with Defendant URIBE.

14. From around April to June 2019, Plaintiff was assigned by Defendants to work as a construction laborer in the Bronx.

15. Around April 21, 2019, Plaintiff awoke around 2:20AM to four missed calls from Defendant URIBE on WhatsApp which were made at around 12:50 AM, 12:51AM, 12:52AM and 12:54AM.

Under the impression that there must have been a work emergency which led to URIBE calling her at such a late hour on a non-work day Plaintiff responded by sending a message to URIBE saying, "I was sleeping and I saw that you called."

16. Defendant URIBE attempted to call Plaintiff again around 4:43AM. After Plaintiff did not answer her phone, URIBE sent Plaintiff a vulgar text message stating "**SWEET PUSSY**."[1]

17. Plaintiff did not respond to the extremely vulgar message as she was shocked and insulted because she had only been working with Defendant URIBE for a couple of weeks and they barely knew each other.

18. Around April 27, 2019, at approximately 4:59AM Defendant URIBE sent Plaintiff a text message on WhatsApp asking "**WHAT ARE YOU DOING**?[2]". When Plaintiff did not respond to his message URIBE sent her another message again asking "**WHAT ARE YOU DOING?**" at approximately 6:10AM.

19. When Plaintiff did not respond to his WhatsApp message Defendant URIBE proceeded to text her directly repeatedly asking, "**WHAT ARE YOU DOING ANDREA?**" Plaintiff responded by telling URIBE, "I am at home. Tell me if there is anything, I can help you with." URIBE responded by telling Plaintiff, "**NOTHING I AM JUST DRUNK AND TEXTING. I HOPE YOU SLEEP WELL.**"

20. Following these messages from Defendant URIBE Plaintiff became extremely fearful for her personal safety and for her livelihood. Plaintiff was extremely concerned that since she went to

---

[1] This message was sent in Spanish and stated "Cuquita Rica" which is translated into English for the purpose of this Complaint.

[2] All of the text messages described in this Complaint were sent primarily in Spanish and have been translated into English for the purpose of this Complaint. Those messages are attached as screenshots and can be found in Attachment 'A' to this Complaint.

work and came home alone that one day URIBE might follow her home.  Additionally, Plaintiff

was fearful for the security of her job because she rebuffed Defendant URIBE's sexual advances.

21. Fearful and not knowing what to do, Plaintiff approached Defendants' Foreman CASTIBLANCO

and showed him the various missed phone calls, WhatsApp messages and text messages that she

had been receiving from Defendant URIBE.

22. Subsequently, no corrective or remedial action was taken by Defendants to stop the ongoing and

unwanted sexual harassment Defendant URIBE was engaging in against Plaintiff.

23. Around early June 2019 Defendants assigned Plaintiff to work as a construction laborer at a

construction site located at 100 Vandam Street, New York, NY where Defendant PAVARINI was

the "upstream" general contractor, and Defendants BREND, BRS and UNIBUD were the

subcontractors.

24. Defendant URIBE remained in his role as Plaintiff's foreman and direct supervisor at the 100

Vandam Street job site.

25. Every day Plaintiff arrived to work at the 100 Vandam Street location, she signed a "PAVARINI

MCGOVERN Daily Workers Log." (emphasis in original)

26. This workers sign-in sheet was always on PAVARINI letterhead containing PAVARINI's logo.

27. These sign-in sheets had each workers' name printed out next to a signature line with each workers'

corresponding "Orientation #."

28. The orientation number for each employee was assigned to them by PAVARINI.

29. Under the lists of worker's names, each PAVARINI MCGOVERN Daily Workers Log contained

an attestation stating: "I [foreman's handwritten name], Foreman for BREND, affirm that the

above list of employees is an accurate list of all our employees on this project today, and that all

our employees have been through the [Paverini McGovern] orientation and meet all the DOB

requirements to be present on this project. (Sub-Contractors are responsible for accounting for all their employees as well as all employees of their lower tiered subs.)"

30. Upon commencing the job at 100 Vandam, PAVARINI, BREND, BRS and UNIBUD required that Plaintiff attend a safety orientation conducted by PAVARINI in the basement of 100 Vandam.

31. Plaintiff attended the orientation conducted and required by PAVARINI.

32. After Plaintiff completed the safety orientation conducted by Defendant PAVARINI, PAVARINI issued Plaintiff an adhesive sticker bearing PAVARINI's logo, which states: "SAFTEY ORIENTATION 2019 100 Vandam St SAFTEY 360° PAVARINI MCGOVERN Higher Standards In Construction EVERYBODY | EVERYWHERE | EVERYDAY."

33. At all times material, Defendant PAVARINI derived an economic benefit from the daily labor conducted by Plaintiff.

34. At all times material, Defendant BREND derived an economic benefit from the daily labor conducted by Plaintiff.

35. At all times material, Defendant UNIBUD derived an economic benefit from the daily labor conducted by Plaintiff.

36. At all times material, Defendant PAVARINI controlled the daily work activities of Plaintiff, including the right to fire, reassign and/or reduce the work hours of Plaintiff.

37. At all times material, Defendant BREND controlled the daily work activities of Plaintiff, including the right to fire, reassign and/or reduce the work hours of Plaintiff.

38. At all times material, Defendant UNIBUD controlled the daily work activities of Plaintiff, including the right to fire, reassign and/or reduce the work hours of Plaintiff.

39. At all times material, a large sign bearing PAVARINI's name and logo was displayed facing the street outside of 100 Vandam.

40. At all times material, a large sign bearing PAVARINI's name and logo was displayed in the workplace breakroom where Plaintiff and other employees took their breaks.

41. At all times material, a large sign bearing PAVARINI's name and logo was displayed outside the worksite offices at 100 Vandam, where employees went for administrative purposes.

42. At all times material, PAVARINI and BREND conducted supervision, inspection, oversight and control of Plaintiff's (and other employees') work activities from their administrative offices at 100 Vandam.

43. At all times material, at the end of each work week, UNIBUD's co-owner, Robert Zawadski, drove to the 100 Vandam worksite and paid Plaintiff and other laborers in cash.

44. Defendant UNIBUD was Plaintiff's direct employer.

45. Defendants never issued Plaintiff wage statements.

46. Defendant PAVARINI's business model depends on its subcontractors and their employees and so depends on Plaintiff's and other similarly situated employees' work.

47. At all times material, Defendant PAVARINI set and enforced requirements related to specific procedures that employees, including Plaintiff, must adhere to and qualifications that employees, including Plaintiff, must meet.

48. Defendant BREND's business model depends on its subcontractors and their employees and so depends on Plaintiff's and other similarly situated employees' work.

49. At all times material, Defendant BREND set and enforced requirements related to specific procedures that employees, including Plaintiff, must adhere to and qualifications that employees, including Plaintiff, must meet.

50. Defendants BREND, PAVARINI and UNIBUD issued Plaintiff an identification badge bearing Defendant BREND's name and corporate logo, that displays Plaintiff's name, photo and other

licensing information, which Defendants BREND, PAVARINI and UNIBUD required Plaintiff to carry on her person at all times while she was on Defendants' work site.

51. Upon information and belief, at all times material, Defendant PAVARINI had the right to inspect and direct the work of Plaintiff as well as the work of all of the other construction laborers at 100 Vandam.

52. At all times material, Defendant PAVARINI had the right direct co-Defendants BREND and UNIBUD to terminate the employment of any construction laborers at the 100 Vandam site, including to terminate the employment of Plaintiff, and/or co-Defendant Uribe.

53. Around June 22, 2019, Defendant URIBE sent Plaintiff a text message asking, "**CAN I ASK YOU SOMETHING WITHOUT YOU TELLING ANYBODY?**" Plaintiff responded, "Of course, tell me." URIBE then asked her, "**WHAT COLOR ARE THOSE PANTIES?**"

54. Shocked and insulted Plaintiff complained to URIBE, "The relationship between you and I is clearly work. I think that these kinds of questions are too much."

55. Around September 4, 2019, Plaintiff sent a text message to Defendant UNIBUD's owner ZAWADSKI complaining about the vulgar and inappropriate text messaged that she and other female co-workers have been receiving from Defendant URIBE.

56. Up through around September 2019, Plaintiff continued to receive harassing text messages and phone calls from URIBE at inappropriate hours of the night and early morning between 10:30 PM and 4:30 AM.

57. Defendants failed to take any corrective or remedial action to address the persistent and ongoing pattern of sexual harassment that Plaintiff brought to their attention.

58. Shortly thereafter, Plaintiff was constructively discharged.

59. Due to Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

60. Due to the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment without unlawful discrimination entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

61. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendants.

62. The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

63. Defendants' conduct constitutes continuing violations.

64. As a result of Defendants' harassing, discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff also suffers future pecuniary losses, emotional pain, suffering and inconvenience, loss of enjoyment of life and other non-pecuniary losses.

66. As Defendants' conduct has been malicious, willful, and outrageous and conducted with full knowledge of the law.

67. The above are some of the examples of the unlawful discrimination and retaliation Plaintiff experienced at the hands of Defendants.

68. Plaintiff hereby demands reinstatement.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## <u>(Not Against Individual Defendant)</u>

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this
Complaint.

70.     Title VII states in relevant part as follows:

> "(a) Employer practices:
>
> It shall be an unlawful employment practice for an employer:
>
> (1)     to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's race, color,
> religion, sex, or national origin."

71. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights
Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful
employment practices of the above-named Defendants. Plaintiff complains of Defendants'
violation of Title VII's prohibition against discrimination in employment based, in whole or in
part, upon an employee's sex and gender.

72. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by
terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's
sex and gender.


## AS A SECOND CAUSE OF ACTION FOR
## RETALIATION UNDER TITLE VII
## <u>(Not Against Individual Defendants)</u>

73. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this
Complaint.

74. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

75. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

77. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

78. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

79. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex/gender and by creating a hostile work environment.

### AS A FOURTH CAUSE OF ACTION
### FOR AIDING & ABETTING UNDER
### NEW YORK STATE LAW
### <u>(Against All Defendants)</u>

80. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

81. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

82. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

### AS A FIFTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### NEW YORK STATE LAW
### <u>(Against All Defendants)</u>

83. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

84. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

85. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

### AS A SIXTH CAUSE OF ACTION
### NEW YORK LABOR LAW - FAILURE TO PROVIDE PROPER WAGE STATEMENTS
### IN VIOLATION OF NEW YORK'S WAGE THEFT PREVENTION ACT
### <u>(Not Against Individual Defendant)</u>

86. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

87. Defendants have willfully failed to furnish Plaintiff with wage notices as required by NYLL, Article 6, §195(3), listing: the dates of work covered by that payment of wages; name of the employee; name of the employer; address and phone number of the employer; rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

88. Through their knowing or intentional failure to provide Plaintiff with the wage statements as required by the NYLL, Defendant has willfully violated the NYLL, Article 6, §§ 190 et seq. and the supporting New York State Department of Labor Regulations.

89. Due to Defendants' willful violations of the NYLL, Article 6, § 195(3), Plaintiff is entitled to recover statutory penalties of two hundred and fifty dollars for each work week that Defendant failed to provide Plaintiff with proper wage statements, or a total of five thousand dollars, reasonable attorneys' attorneys fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

90. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

91. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual

orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or

to discharge from employment such person or to discriminate against such person in compensation

or in terms, conditions or privileges of employment."

92. Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, by creating and maintaining discriminatory working conditions by

her employer, *inter alia*, on the basis of her sex/gender, and wrongful termination.


### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

93. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

94. The New York City Administrative Code Tide 8, §8-107(7) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against

any person because such person has opposed any practices forbidden under this chapter...."

95. Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Tide 8, §8-107(7) by discriminating against Plaintiff because of her

opposition to the unlawful employment practices of Defendants as Plaintiff's employer.

### AS A NINTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

96. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this

complaint as if fully set forth at length.

97. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

98. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A TENTH CAUSE OF ACTION
## FOR VIOLATION OF RIGHTS PROTECTED UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

99. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

100.     Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

101.     Defendants violated the above section as set forth herein.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

102.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

103.     Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful

discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

104.     Defendants violated the above section as set forth herein.

## AS A TWELVTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

105.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

106.     Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

107.     Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

108.     As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A THIRTEENTH CAUSE OF ACTION
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

109.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of

this complaint as if fully set forth at length.

110.     Defendants' acted in a negligent manner with respect to the sexually harassing behavior

inflicted upon Plaintiff which was extreme and outrageous to such extent that the action was

atrocious and intolerable in a civilized society.

111.     Defendants' conduct was negligent with respect to behavior so outrageous in character and

extreme in degree as to go beyond all possible bounds of decency.

112.     As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined

at the time of trial.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally,

in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees,

costs, and disbursements of action; and for such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated: New York, New York
       July 7, 2021

Respectfully Submitted,
**DEREK SMITH LAW GROUP, PLLC.**
Attorneys for Plaintiff

BY: _____

Seamus Barrett, Esq.
1 Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 587-0760

# ATTACHMENT 'A'

































### Me
17:17, Sep 4

Good afternoon Don Robert greets you Andrea I would like to discuss 2 topics in this conversation. The first one that approached me to work in this week, in apology if I have not really I have not felt anything right, I talked with Walter the foreman on Tuesday and I apologized because I promised to go to work but in these cases the health  It is first and I need to have a little more mobility in my arm so that the pain and inflammation disappear.  If God permits, I give you my word that on Monday I will already be making myself present in VanDam.



**Me**
17:17, Sep 4

The second. This is a very, very delicate issue, I have not said it before because of fear. No one in the company knows it but it is time that this type of abuse is due to stop. Mr. Carlos Uribe has been in the month of April since I joined the company to send me messages on weekends (not all) telling me and asking me totally improper, obscene, nothing work and they are in the early hours of the morning



calling it in other terms.  This is workplace sexual harassment.  Mr. Uribe has personally apologized on few occasions saying that the messages and calls he makes to me is a mistake, but it would be justified as a mistake if it is once but in my case they are already sometimes and this is NOT A MISTAKE.  Also I am not the only one, because conversing with the partner Genesis The same thing has happened to her, It is more Genesis has had problems in her home with her husband because of this and she has blocked Mr. Uribe's number.  Don Robert I have kept quiet for fear of losing my job because I thought that if I told you the reprisal would have been against me in getting me out of the company and certainly also afraid that at the time I complained to you I would not know the reaction  in action of Mr. Uribe.



**Me**
17:19, Sep 4

But I decided to talk because this must stop. The Saturday that happened I received messages from the Lord again late at night and I feel bad about what is happening to me, Because there are people even with negative attitudes that damage a work environment, I all the messages had them on my cell phone. And anguish of not knowing what will happen after this because I can not shut up more I found myself in the obligation today to inform you what is unfortunately happening for a few months ago with angry fear 9 with



Rober Boss

the messages had
them on my cell p

VIEW ALL

17:19

Hi Andrea. I really
sorry for this situa-
tion. We didn't know
anything. You won't
lose job. That's for
sure. Maybe it would
be good to meet
me and Chris with
you and someone
who speak English.
We won't tolerate
this behavior from
Carlos or any other
foreman.

17:26

Enter message