UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
**ANDREA TOLEDO,**

                                         Case No: 21-cv-882

                         Plaintiff,


      -against-


**UNIBUD RESTORATION CORP.,**
**BREND RESTORATION LLC,**
**BREND RESTORATION SERVICES INC.,**
**PAVARINI MCGOVERN, LLC, and CARLOS**
**URIBE, individually,**

                         Defendants.
-----------------------------------------------------------------------X




**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO BREND
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**




Seamus P. Barrett, Esq.
DEREK SMITH LAW GROUP, PLLC
**Attorneys for Plaintiff**
1 Penn Plaza, 49th Floor
New York, New York 10119
(212) 587-0760


i

## TABLE OF CONTENTS

I. Preliminary Statement .................................................................1

II. Statement of Facts...................................................................3

III. Summary Judgment Standards on Joint Employment Motions...............7

IV. Argument ...............................................................................8

    1.      Plaintiff Has Established Facts Sufficient to Support that Brend Was Her Employer.................................................................................8

    2.      As a Matter of Formal or Functional Control, there are Genuine Disputes of Material Fact as to Defendant's Status as an Employer of Plaintiffs that a Jury Must Determine ……………………………………………………10

    3.      Sexual Harassment of Plaintiff Occurring Outside of Work Can Be Imputed To Employer Via Strict Liability and Vicarious Liability……………..16

V. Conclusion .........................20

## TABLE OF AUTHORITIES

### Cases

*Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011).......................................................................11

*Al-Kaysey v. L-3 Servs.*, 2013 U.S. Dist. LEXIS 141037 (E.D.N.Y. 2013)........................................13

*Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)...................................9

*Ayala v. Metro One Sec. Sys., Inc.*, No. 11-CV-233 JG ALC, 2011 WL 1486559, at *6 (E.D.N.Y. Apr. 19, 2011)..............................................................................................................................................14

*Barbosa v. Continuum Health Partners, Inc.*, 716 F Supp 2d 210, 219 (S.D.N.Y. 2010) ...........................14

*Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210 (S.D.N.Y. 2010) .................................22

*Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216 (S.D.N.Y. 2010) ........................9

*Barbosa v. Continuum Health Partners. Inc.*, 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010) .....................16

*Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 116 (1st Dep't 2011) ............................................11

*Benussi v. UBS*, 2014 WL 558984, at *8 (S.D.N.Y. Feb. 14, 2014) .........................................................25

*Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) .................................. 18

*Boykin v. KeyCorp*, 521 F.3d 202, 212–13 (2d Cir.2008) ........................................................................... 21

*Broderick v. Cauldwell-Wingate Co.*, 301 N.Y. 182, 187 (1950) ............................................................... 19

*Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998) ................................................................. 21

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 13 (2d Cir. 1984) ................................................................. 18

*Carter v. Rosenberg & Estis*, 1998 WL 150491, at *11 (S.D.N.Y. Mar. 31, 1998) ................................... 25

*Century Sur. Co. v. Franchise Contractors, LLC*, No. 14 CIV. 277 (NRB), 2016 WL 1030134 ............. 19

*DeMartino v. New York*, 586 F. App'x 68 (2d Cir. 2014) ........................................................................ 15

*Dennis v. City of New York*, 304 A.D.2d 611, 611, 758 N.Y.S.2d 661, 663 (2d Dep't 2003) ................... 20

*Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003) ....................................................................................... 21

*Dias v. Cmty. Action Project, Inc.*, No. 07-CV-5163 (NGG) (RER) ......................................................... 10

*Dias v. Cmty. Action Project, Inc.*, No. 07-CV-5163 (NGG) (RER), 2009 WL 595601, at *5 (E.D.N.Y.
     Mar. 6, 2009) ..................................................................................................................................... 14

*Diaz v. NBC Universal, Inc.*, 536 F.Supp.2d 337 (S.D.N.Y. 2008) ...................................................... 8, 20

*Doe v. City of New York*, 583 F. Supp. 2d 444, 450 (S.D.N.Y. 2008) ...................................................... 23

*Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009) .............................................. 10

*Godlewska v. HDA*, 916 F. Supp. 2d 246, 259–60 (E.D.N.Y. 2013) ........................................................ 19

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) ............................................................................ 8

*Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ...................................................... 26

*Gregory v. Daly*, 243 F. 3d 687, 691 (2d Cir. 2001) ................................................................................ 23

*Griffin v. Sirva, Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) ............................................................................. 9

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ................................................................................ 24

*Hassanein v. Gino's Italian Rest.* on 5th, No. 16CIV3365AMDST, 2017 WL 4350515, at *7 (E.D.N.Y.
     Mar. 27, 2017) .................................................................................................................................... 13

*Held v. Gulf Oil Co.*, 684 F.2d 427 (1982) ............................................................................................... 27

*Hill v. Citibank Corp.*, 312 F.Supp.2d 464, 480 (S.D.N.Y. 2004) .......................................................... 27

*Hiralall v. Sentosacare*, LLC, No. 13 CIV. 4437 (GBD), 2016 WL 1126530, at *5–7 ............................. 19

*Huan Wang v. Air China Ltd.*, 2019 U.S. Dist. LEXIS 97160 (E.D.N.Y. 2019) .............................. 13

*Hughes v. Tishman Constr. Corp.*, 40 A.D.3d 305, 306 (1st Dep't 2007) .................................... 20

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 127 (S.D.N.Y. 2011) ........................ 19

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) .................................... 11

*Martinez v. 342 Prop. LLC*, 89 A.D.3d 468, 469 (1st Dep't 2011) ............................................. 19

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404, 91 L. Ed. 2d 49 (1986) ........ 20

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 110 (2d Cir. 2013) ............................ 22

*Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999) ................................ 27

*Moussa Hassanein v. Gino's Italian Rest.*, on 5th, No. 16CIV3365AMDST, 2017 WL 4350515, at *7
(E.D.N.Y. Mar. 27, 2017) ........................................................................................ 14

*Parrish v. Sollecito*, 258 F.Supp.2d 264, 269 (S.D.N.Y. 2003) ................................................ 27

*Patane v. Clark*, 508 F. 3d 106, 113 (2d Cir. 2007) .......................................................... 23

*Popat v. Levy*, 328 F. Supp. 3d 106 (W.D.N.Y 2018) .......................................................... 13

*Reed v. A.W. Lawrence & Co.*, 95 F. 3d 1170 (2d Cir. 1996) .................................................. 24

*Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) .................. 8

*Smith v. LHC Grp.*, Inc., 727 F. App'x 100, 106 (6th Cir. 2018) ............................................. 27

*St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013) ................................ 10

*St. Jean v. Orient-Express Hotels, Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013) ............................ 13

*St. Jean v. United Parcel Serv. Gen. Serv. Co.*, 509 F. App'x 90, 90–91 (2d Cir. 2013) ........................ 11

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002) ...................................................... 21

*Vasto v. Credico* (USA) LLC, No. 15 CIV. 9298 (PAE), 2017 WL 4877424 .......................................... 19

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) ............................................ 26

*Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (2009) .............................................. 23

*Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31, 32-33 (1st Dep't 2009) ............................ 11

*Winston v. Verizon Servs. Corp.,* 633 F. Supp. 2d 42, 49 (S.D.N.Y. 2009) ...................................... 21

*Zakrzewska v. New Sch.*, 598 F. Supp. 2d 426, 434-36 (S.D.N.Y. 2009).................................................24

*Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61 (2d Cir. 2003) .................................................................18

**<u>Statutes</u>**

New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 ...........*passim*

New York State Human Rights Law, New York Exec. Law §§ 290 ....................................*passim*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e...............................................*passim*


New York Labor Law ("NYLL").........................................................................................*passim*

## I.     **Preliminary Statement**

This is a case brought by a construction worker who was repeatedly sexually harassed by her immediate supervisor over a period of several months while both individuals worked exclusively for Defendants BREND at their construction project located at 100 Vandam Street in Manhattan.

Whether Plaintiff was sexually harassed by her supervisor, or subjected to a hostile work environment is not in dispute on the current motion. (See Def.'s Mem. at 2.) Instead, Defendants BREND RESTORATION LLC, and BREND RESTORATION SERVICES, INC. (collectively "Brend" or "Defendant") argues that Brend was not Plaintiffs' employer and therefore is not responsible for the sex discrimination, sexual harassment, hostile work environment, and NYLL wage statement violation by Defendants. Plaintiffs do not dispute that they were also employed by another Defendant in this case: Unibud[1]. But Unibud was not Plaintiffs' only employer. As discussed below, there are numerous disputed factual issues going to the issue of Brend's role as a joint employer. As described in the four duly sworn statements submitted in opposition to Brend's motion[2], the Plaintiff and her coworkers supplied to the Vandam project by Unibud variously filled out Brend paperwork, wore Brend hats and vests, had Brend identifications, regularly worked side-by-side with Brend employees on the same projects interchangeably, were supervised by Brend staff, and worked exclusively for Brend during the period of their

---

[1] Plaintiff also maintains her position that the decision to dismiss her claims against co-Defendant Pavarini was in error and at odds with clearly established Second Circuit binding mandatory authority regarding pleading requirements at the motion to dismiss stage.

[2] Plaintiff's Declaration, as well as the Declarations of three non-party witnesses who all provide sworn accounts of how Brend was in sole control over the daily work activities of Plaintiff, Uribe and all of the other laborers Unibud assigned to work for Brend.

1

employment at the worksite located at 100 Vandam Street. Furthermore, the statements in the record make clear that Brend retained significant power to control the manner in which Plaintiff's work was conducted, and what specific tasks she did at work. As a matter of economic reality, there are genuine issues of material fact as to whether Brend was Plaintiffs' employer.

Defendants' sole reliance on a self-serving declaration of Brend's president, Matthew Jaworski and their discourse about Brend's business structure and work with subcontractors in general and Unibud in particular—as well as its argument that they were completely ignorant of the sexual harassment occurring under their watch, so they purportedly should not bear liability as a joint employer—simply misses the mark, and is at odds with clearly established mandatory binding legal authority. This case is about a particular workplace, and the role Brend played with particular workers, including Plaintiff and her harasser, co-Defendant Carlos Uribe. And what matters is what happened at the actual workplace, and the economic realities of that workplace—not how Brend may have formally structured its relationship with subcontractors, including with Unibud.  Brend's assertions that they were not aware of the harassment, and that the actual harassment took place outside of work are not viable defenses under these circumstances according to well established mandatory legal authority.

The Court here should not choose between conflicting versions of the events at issue here. Resolving all ambiguities and drawing all reasonable inferences against Brend as required, the Court should permit Plaintiff to present her testimony, and that of her three witnesses to a jury to prove Brend's role as their employer.

## II.     Statement of Facts[3]

Around early June 2019 Defendants assigned Plaintiff to work as a construction laborer at a construction site located at 100 Vandam Street, New York, NY where Defendants BREND and UNIBUD were the subcontractors who were Plaintiff 'direct' employers. (Plaintiff's Rule 52.1 Counterstatement of Undisputed Fact ¶¶ 26-91).  Despite the fact that Plaintiff previously notified supervisory personnel of Defendants that co-Defendant CARLOS URIBE had been repeatedly sending her inappropriate and sexual text messages at odd hours of the night and early mornings, URIBE was assigned by Defendants as Plaintiff's direct supervisor at the 100 Vandam site. (*Id.* ¶¶ 26-91) Every day Plaintiff arrived to work at the 100 Vandam Street location, she signed a "Daily Workers Log." (emphasis in original).

Under the lists of worker's names, each Daily Workers Log contained an attestation stating: "*I Walter Rosso, Foreman for BREND, affirm that the above list of employees is an accurate list of all our employees on this project today, and that all our employees have been through the PMG orientation and meet all the DOB requirements to be present on this project. (Sub-Contractors are responsible for accounting for all their employees as well as all employees of their lower tiered subs.)* (*Id.* ¶¶ 26-91)

Upon commencing the job at 100 Vandam, Brend required that Plaintiff and her coworkers attend a safety orientation conducted Brend's project manager, Marek Sudol in the basement of 100 Vandam. (*Id.* ¶¶ 26-91) Plaintiff attended the orientation conducted and required by Brend in around early June 2019. (*Id.* ¶¶ 26-91) After Plaintiff completed the safety orientation conducted

---

[3] These facts are an abridged version of the facts in Plaintiff's Rule 52.1 Counterstatement of Undisputed Facts. For the purpose of brevity, only the facts most pertinent to Defendant Brend's motion are recited herein.  For a complete recitation of the facts please see the Plaintiff Rule 52.1 Counterstatement of Undisputed Facts.

by Brend, Brend issued Plaintiff an identification card, hard hat and work vest all bearing the Brend

corporate logo (*Id.* ¶¶ 26-91) Defendant Brend derived an economic benefit from the daily labor

conducted by Plaintiff and Brend's project manager, Marek Sudol controlled the daily work

activities of Plaintiff, including the right to fire, reassign and/or reduce the work hours of Plaintiff

and her coworkers. (*Id.* ¶¶ 26-91)

Defendant Brend's business model depends on its subcontractors and their employees

including Plaintiff and other similarly situated employees. At the 100 Vandam site, Defendant

Brend set and enforced requirements related to specific procedures that employees, including

Plaintiff, were required to adhere to, and dictated the qualifications that employees, including

requirements that they, including Plaintiff, must meet. At the 100 Vandam construction site, Brend

conducted supervision, inspection, oversight and control of Plaintiff's (and other construction

workers') work activities at the 100 Vandam site. (*Id.* ¶¶ 26-91). Indeed Brend issued Plaintiff an

identification badge bearing Defendant Brend's name and corporate logo, that displays Plaintiff's

name, photo and other licensing information, Brend required Plaintiff to carry on her person at all

times while she was on the 100 Vandam work site, and indeed, Defendant Brend had the right to

inspect and direct the work of Plaintiff as well as the work of all of the other construction laborers

assigned to work there by Unibud at 100 Vandam (*Id.* ¶¶ 26-91). Indeed, Plaintiff and the other

workers from Unibud were directed to tell anyone who asked, that they were employed by Brend.

Over the course of Plaintiff's employment with Defendants spanning from March 2019 to

September 2019, including numerous occasions during her assignment to the 100 Vandam project

site, which began in June 2019, Plaintiff's direct supervisor at the 100 Vandam site, Defendant

CARLOS URIBE, routinely made repeated nightly calls and sent sexually explicit text messages

to Plaintiff between the hours of 12:50 AM and 6:10 AM, which included repeatedly asking Plaintiff "**WHAT ARE YOU DOING?**", "**WHAT ARE YOU DOING, ANDREA**?", as well as unwanted vulgar and sexually inappropriate statements such as: "**SWEET PUSSY**", "**I AM JUST DRUNK AND TEXTING. I HOPE YOU SLEEP WELL**", "**CAN I ASK YOU SOMETHING WITHOUT YOU TELLING ANYBODY?**", "**WHAT COLOR ARE THOSE PANTIES?**" (*Id.* ¶¶ 26-91), and these incidents comprise only a non-exhaustive summary of the harassment to which Defendants subjected Plaintiff. (*Id.* ¶¶ 26-91) During this period, Defendants also paid Plaintiff only in cash and never provided any wage statements as required under the NYLL. (*Id.* ¶¶ 26-91) Plaintiff complained on multiple occasions to multiple supervisory personnel, including another supervisor/foreman, Cesar Castiblanco, to whom she showed the numerous unwanted and sexual late-night and early morning texts from Defendant URIBE, and Castiblanco took no action. (*Id.* ¶¶ 26-91)  Since no actions were taken upon her first complaints to supervisor Castblanco in April, Plaintiff grew extremely fearful for her physical safety and for the safety of her livelihood as she was forced to continue working under Defendant URIBE's supervision, and finally complained in writing to one of the owners of Defendant UNIBUD, who still took no action in September 2019.(*Id.*) Overwhelmed with fear and anxiety at the lack of any meaningful response to her complaints of sexual harassment from Defendant URIBE, and while still working under his supervision, Plaintiff had no reasonable alternative other than to resign. (*Id.*)

### III.   Summary Judgment Standards on Joint Employment Motions

Summary judgment is only warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c).  The burden of demonstrating no material fact exists lies with the party seeking judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The court's main function on a motion for summary judgment is issue finding rather than issue determination. *Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395, 404, (1957). Because summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue. *Rotuba Extruders, Inc. v. Ceppos*, 46 N.Y.2d 223, 231 (1978). Thus, when the existence of a material issue of fact is even arguable or debatable, summary judgment should be denied. *Sillman, supra*, 3 N.Y.2d at 404.

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a).  A material fact is one that might "affect the outcome of the suit under the governing law," and a genuine dispute as to a material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A reviewing court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010) (quotation marks and citation omitted).  Further, "it is well established that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (cleaned up).  Accordingly, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a

6

reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Gummo*

*v. Village of Depew*, 75 F.3d 98 (2d Cir. 1996) (collecting cases).

As this Court has noted, "[b]ecause determining joint employment is 'fact- intensive,' awards of summary judgment on this issue, although sometimes appropriate, are rare." *Fernandez v. HR Parking Inc*., 407 F. Supp. 3d 445, 460 (S.D.N.Y. 2019) (Gorenstein, M.J.) (citing *Greenawalt*, 642 F. App'x at 37.); *see also Quintanilla v. Suffolk Paving Corp.*, No. CV 09-5331 (AKT), 2019 WL 885933, at *17 (E.D.N.Y., Feb. 22, 2019) ("The Second Circuit has held that in light of the 'fact-intensive character of a determination of joint employment,' any disposition of joint employer status at the summary judgment stage is not typically appropriate." (citation omitted); *Hart v. Rick's Cabaret Intern., Inc*., 967 F.Supp.2d 901, 941 (S.D.N.Y. 2013) ("As the Second Circuit has recognized, the determination of joint employer status is rarely appropriate to make at the summary judgment stage, '[b]ecause of the fact-intensive character of a determination of joint employment.'" (citation omitted)); *Tuckett v. Slade Industries, Inc*., No. 1:16-cv- 4081-GHW, 2018 WL 3910821, at *3 (S.D.N.Y. Aug. 14, 2018) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment" (citations omitted).)

## IV.   Argument

### 1.   Plaintiff Has Established Facts Sufficient to Support that Brend Was Her Employer

"The Title VII definition of "employer" is "sufficiently broad to encompass *any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an 'employer' ... at common law*." *Serrano v. 900 5th*

7

*Ave. Corp.*, 4 F. Supp. 2d 315, 316–17 (S.D.N.Y. 1998) (emphasis added) citing *Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1063 (2d Cir.1982), *vacated on other grounds,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). *See also Rivera v. Puerto Rican Home Attendants Servs. Inc.,* 922 F.Supp. 943 (S.D.N.Y.1996) (collecting and describing the "numerous formulations" used in the Second Circuit to determine the applicability of the Title VII definition of "employer").

The two doctrines that "have been developed to allow a plaintiff to assert employer liability in the employment discrimination context against entities that are not her formal, direct employer" are the joint employer doctrine and the single employer doctrines. *Griffin v. Sirva, Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (citing *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216 (S.D.N.Y. 2010)). The joint employer doctrine applies when two separate legal entities jointly handle aspects of the employer-employee relationship. *Id.* (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)).

The Second Circuit has recognized two somewhat different tests for determining whether a joint employer relationship exists. The first test, derived from *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8 (2d Cir. 1984) looks to whether a putative employer exercises *formal* control over an employee. *See Zheng v. Liberty Apparel*, 355 F.3d 61, 72 (2d Cir. 2003). The four factors a court considers under *Carter* are whether a putative employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter,* 735 F.2d at 12.

8

The "critical consideration in the instant case is the fact that control and supervision of workers is the "[m]ost important[ ]" factor in this analysis". *Zavala v. PEI Elec. Servs. Grp. Inc.*, No. 20CIV9437PAEGWG, 2022 WL 2312794, at *12 (S.D.N.Y. June 28, 2022), *report and recommendation adopted*, No. 20CIV9437PAEGWG, 2022 WL 2712853 (S.D.N.Y. July 13, 2022) citing *Monzano-Moreno v. Fence*, 2021 WL 688295, at *1 (E.D.N.Y. Feb. 23, 2021) (alterations in original); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) ("The critical inquiry in determining whether an employer-employee relationship exists [is] the degree of control exercised by the purported employer over the results produced or the means used to achieve the results.") (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003)).

Plaintiff finds the evidence as to this factor, in combination with the other factors favoring Plaintiff, sufficient to deny Brend summary judgment. Indeed, Brend does not assert that summary judgment would be available if this Court were to find the control and supervision factor met. Brend simply provides a self-serving declaration of its president, that is factually diametrically opposed to the factual assertions sworn to by Plaintiff as well as three non-party witnesses, all of whom make abundantly clear that Brend *and only Brend* was in complete control of Plaintiff's work activities along with those of her supervisor and harasser, Uribe, as well as all of the other workers assigned by Unibud to work for Brend at 100 Vandam. In light of the fact that "the overarching concern is whether the alleged employer possessed the power to control the workers in question," *Herman*, 173 F.3d at 139, we conclude that a reasonable jury could find that Brend had such control.

Here, Plaintiff has presented factual declarations of Plaintiff and three non-party witnesses showing the degree of control Brend exercised over the workplace was near absolute.

2.   **As a Matter of Formal or Functional Control, there are Genuine Disputes of Material Fact as to Defendant's Status as an Employer of Plaintiffs that a Jury Must Determine**

Analyzing the economic realities of Plaintiffs' employment with these standards in mind, it is evident there are genuine issues of material fact that preclude summary judgment in this case.

Factors which the Court should consider when analyzing the economic reality of Plaintiffs' employment include:

*Control of terms of employment and work schedule*:  As described above, Plaintiffs' written statements raise factual issues that go to Brend's significant control of the Plaintiff workers' day-to-day work.  Brend employees oriented Plaintiffs to the work they would be performing at each worksite, provided safety training and safety gear, provided work material and work vests bearing the Brend logo, assigned Plaintiffs to various tasks, and supervised Plaintiffs' work, corrected and redirected their work as needed,.  Indeed, Brend supervision often ensured the work was performed in a proper workmanship manner, including providing new instructions when Brend provided work materials, explaining to workers how to do perform particular tasks, or reassigning Plaintiffs to certain tasks alongside Brend's direct employees.  At the very least, there are genuine issues of material fact as to the level of control Brend had over Plaintiffs' work beyond.  Because of these disputes, summary judgment is not warranted.

Brend attempts to minimize the interactions between Plaintiffs and Brend, characterizing it as minimal, but Plaintiffs present evidence which raises a genuine factual issue as to whether

Brend's actions were so limited.  For example, Plaintiff and the three witnesses providing declarations in opposition to Brend's motion describe highly involved management and supervision all day long on a daily basis.  This statement contradicts Brend's characterization of the parties' interactions, and a jury should be permitted to weigh this and other evidence contradicting Defendant's evidence, and make its own credibility determinations.

_____

Moreover, "the law does not require an employer 'to look over his workers' shoulders every day in order to exercise control."  *Barfield*, 537 F.3d at 147 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988)).  "Joint employer status may be found even where control is exercised only occasionally."  *Vasto v. Credico (USA) LLC*, 2017 WL 4877424, at *9 (S.D.N.Y. Oct. 27, 2017) (internal quotation marks and citations omitted), aff'd, 767 F. App'x 54 (2d Cir. 2019).  In addition, the relevant consideration in determining if an individual or entity is an employer is whether that putative employer has the *power* to control the employee, not only whether it exercised such control.  *See Coley v. Vannguard Urban Imp. Ass'n, Inc.,* No. 12-CV-5565 PKC, 2014 WL 4793825, at *3–4 (E.D.N.Y. Sept. 24, 2014) ("Notably,[the] status [of employer] does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control "do[ ] not diminish the significance of its existence.") (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (which notes that the relevant inquiry into whether an employment relationship exists under [Title VII as well as the City and State antidiscrimination statutes] is "whether the alleged

11

employer possessed the power to control the workers in question")) (further citation omitted); *see Saleem v Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 149 n. 37 (2d Cir. 2017) (noting that the joint employment test looks at the "power to control" rather than the actual control exercised).

Defendant, in the sole piece of evidence they present to attempt to justify summary judgement, a single self-serving delaration of Brend's president, minimizes its direction of the Plaintiffs' work. However, "[t]he fact that the supervision was necessary does not render this factor any less important for the 'economic reality' analysis." *Fernandez* , 407 F. Supp. 3d at 454 (citing *Barfield v. NYC Health & Hosp. Corp.*, 537 F.3d 132, 147 (2d Cir. 2008)) (noting that in *Barfield,* a hospital was required by law to supervise nurses, yet *Barfield* found that the hospital's supervision still weighed in favor of joint employment). In this case, Plaintiff and her coworkers also assigned to work for Brend did not merely make corrections based on a quality control check that was then delegated to Uribe and other workers assigned by Unibud for execution. Rather, all of Plaintiff's work tasks were regularly subject to Brend's guidance and instruction on how to carry out the tasks or assignments they had been given, as well as looked to Brend supervisors for all materials, as well as when and how to execute their work.

In *Fernandez*, the parties disputed the level of control the defendants had over the plaintiffs. This Court determined that summary judgment was inappropriate, because "accepting plaintiffs' testimony as true, and according them all reasonable inferences in their favor, a jury could find that while the [defendants] exercised little or no supervision over specific employee schedules, they exercised significant supervision over the conditions of employment."

*Fernandez v,* 407 F. Supp. 3d at 453. The same logic applies here given that a reasonable jury assessing all of the parties' evidence as to the level of control could rule for Plaintiffs that Defendant was their joint employer.

*Determining the rate of pay and maintaining employment records*:  While there is no evidence that Brend set the rates of pay of the Plaintiffs, multiple Plaintiffs testify that Brend kept a login or attendance sheet for work at the Vandam project site, with a list of workers' names.   (See SPB Decl. Ex. 2).   Indeed, Plaintiff and three other witnesses attest that Brend supervisors on site kept daily work records in addition to daily supervision, direction and work materials. (See SPB Decl Ex.s 3-5)  There is thus a disputed fact as to Brend's maintenance of employment records.  This factor weighs in favor of joint employment and against summary judgment here.

*Power to hire and fire employees*:  While it appears that Brend did not directly hire or fire Plaintiff or any of her coworkers during the time at issue, it is beyond dispute that they subcontracted with Unibud for Unibud to provide laborers to work for Brend at the 100 Vandam project.  Further, both Plaintiff and third-party witness provide evidentiary testimony that Brend did in fact have the power to discipline Plaintiff or her coworkers, and exercised that power on at least one occasion.  And in any event, this factor alone is not decisive.  As this Court has noted, "*Zheng* makes clear that not every factor needs to weigh against joint employment in order for a defendant to be entitled to summary judgment." *Fernandez,* 407 F. Supp. 3d at 451 (citing *Zheng*, 355 F.3d at 77).  "In fact, under "certain circumstances, an entity can be a joint employer … even when it does not hire and fire its joint employees, directly dictate their hours,

or pay them." *Zheng, 355 F.3d at 71* at 70 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)).

*Use of Brend's materials and equipment:* The issues raised by Plaintiff as to her regular use of Brend's material and equipment also weighs in favor of a finding that Brend was their employer. "[W]hether a putative joint employer's … equipment are used by its putative joint employees [ ] is relevant because the shared use of … equipment may support the inference that a putative joint employer has functional control over the plaintiffs' work." *Fernandez*, 407 F. Supp. 3d at 456–57 (citing *Zheng*, 355 F.3d at 72. , the factfinder can use these readily verifiable facts as a starting point in uncovering the economic realities of a business relationship.").

*Plaintiffs' work as integral to Brend's work:* Plaintiffs performed the same type of work as that of workers on Brend's payroll at the same project, and often worked on the same tasks interchangeably. Plaintiff's work was indisputably construction work, and there is no question that her work was integral to the construction services Brend was contracted to fulfill by the general contractors at 100 Vandam worksite. Defendants do not dispute that they sought to bring on additional labor to complete the work they had promised to complete, and at least Plaintiff and one witness has testified that all workers directly employed by Brend worked side-by-side on the same tasks with Plaintiff and the other workers supplied by Unibud, weighing in favor of joint employment and counseling against a grant of summary judgment here.

*Supervision of Plaintiff*s: The inquiry under this factor is largely the same as the inquiry under the second formal control factor and is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs." *Martin*, 273 F. Supp. 3d

14

at 433 (citations, internal quotation marks, and alterations omitted). As already discussed at length, there is enough dispute as to the level of supervision of Brend over Plaintiffs to weigh against summary judgment here. *See Fernandez,* 407 F. Supp. 3d at 459.

*Shift as unit:* As noted above, Plaintiffs performed the exact same work as that of other Brend workers, at the same project. In the *Fernandez* case, the Court noted that "[t]he fourth factor asks not whether all of the putative joint employer's contractors do the same work but whether, if the putative joint employer hired one contractor rather than another, 'the <u>same</u> employees would continue to do the <u>same</u> work in the <u>same</u> place'." *Fernandez*, 407 F. Supp. 3d at 458 (citing *Jean–Louis v. Metropolitan Cable Communications, Inc.*, 838 F. Supp. 2d 111, 135 (S.D.N.Y. 2011) (emphasis in original) (further citation omitted) Here, there is no contention that other subcontractors performed the same type of work as Brend to ensure that Brend met its scheduled deadlines on the project, and the work they performed could have easily shifted to another group of subcontracted workers to continue the work in the same place.

*Exclusively work for Putative Joint Employer:* The Plaintiff here worked full-time for Brend at the 100 Vandam site. (Pl Decl. ¶ 1-15). Plaintiff's work was thus "predominantly" for Brend, a factor which weighs in favor of Brend being deemed a joint employer. *See Fernandez,* 407 F. Supp. 3d at 459.

### 3. Sexual Harassment of Plaintiff Occurring Outside of Work Can Be Imputed To Employer Via Strict Liability and Vicarious Liability

It is well settled that "harassment does not have to take place within the physical confines of the workplace to be actionable; it need only have consequences in the workplace." *Arredondo v Schlumberger Ltd.*, 583 F Supp 3d 783, 810 [WD Tex 2022] citing *Lapka v. Chertoff*, 517 F.3d

15

974, 983 (7th Cir. 2008) (citing *Doe v. Oberweis Dairy*, 456 F.3d 704, 715–16 (7th Cir. 2006)). The Sixth Circuit noted that most courts agree that an employer is not responsible for harassment "perpetrated by a non-supervisory employee after work hours and away from the workplace setting," but acknowledged that if the employee subject to harassment "is forced to work for, or in close proximity to, someone who is harassing her outside the workplace, the employee may reasonably perceive the work environment to be hostile." *Duggins ex rel. Duggins v. Steak'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001) (citations omitted); accord *Roy v. Correct Care Sols.*, LLC, 914 F.3d 52, 63 n.4 (1st Cir. 2019) ("Courts ... permit evidence of non-workplace conduct to help determine the severity and pervasiveness of the hostility in the workplace as well as to establish that the conduct was motivated by gender." (quoting *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409 (1st Cir. 2002))).

A sexual; harasser and his victim may "encounter one another in external contexts not strictly stemming from or compelled by a business purpose, but to which the employment relationship may necessarily carry over by reason of circumstances that may have their origins in the workplace itself. *Parrish v. Sollecito*, 249 F. Supp. 2d 342, 351 (S.D.N.Y. 2003) *citing, e.g., Burlington,* 524 U.S. 742, 748, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (drinks with the supervisor in the hotel lounge during a business trip); *Meritor,* 477 U.S. at 60, 106 S.Ct. 2399 (sexual relations with the supervisor at motels and restaurants after regular hours); *Tomka,* 66 F.3d at 1301–02 (dinner at the hotel with supervisors during a business trip); *Saxton,* 10 F.3d at 528 (lunch with the supervisor and drinks at a nightclub after work).

Based on the foregoing, Defendant Brend's argument that because the sexual harassment occurred outside of work is unavailing because Defendant Uribe was a supervisor who used his

16

work relationship with Plaintiff to engage in sexually harassing phone calls and text messages with Plaintiff.

*    *    *

As described above, there are a multitude of factual issues before the Court which would require resolution before there could be a determination as to whether Brend was a joint employer of Plaintiffs.  The role of Brend's Project Manager, Marek Sudol and Forman Walter Rosso, the frequency of oversight by Brend staff, and the records the "Daily Workers Log and other safety records kept by Brend, are all issues which can only be decided upon an assessment of credibility.  Plaintiff should be given the opportunity to provide her testimony and that of her witnesses to a jury.

Moreover, the Court should take note of "one overarching circumstance that counsels against an award of summary judgment is the fact that the [Brend] was in a position to be aware of and prevent the violation of the [applicable labor] laws." *Fernandez,* 407 F. Supp. 3d at 460–61.  "As the Eleventh Circuit has noted, 'a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors.'" *Id.* (citing *Layton v. DHL Exp. (USA), Inc*., 686 F.3d 1172, 1180 (11th Cir. 2012)).

17

4.     **Defendant Brend Is Strictly Liable under Title VII, NYSHRL and NYCHRL and the NYSHRL Because Plaintiff's Sexual Harasser Was A Supervisor**

Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided *Vance v. Ball State Univ.,* 570 U.S. 421, 424, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013) *citing Ellerth, supra,* at 765, 118 S.Ct. 2257. Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker.

The pertinent City statute, N.Y.C. Admin. Code § 8-107(13)(b), which New York State's Human Rights Law mirrors, provides that an employer is liable for such conduct by its employee where:

*(1) The employee or agent exercised managerial or supervisory responsibility; or*

*(2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or*

*(3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.*

The statute's unambiguous language, held the court, "indicates the existence of strict liability in the employment context for acts of managers and supervisors, and for acts of coworkers where the employer knew of the act and failed to take prompt and effective remedial action, or should have known and had not exercised reasonable diligence to prevent it." *Melendez v. New York City Transit Authority et al*, No. 159390/2013, 2021 WL 2627513 (N.Y. Sup Ct, New York County June 24, 2021)

The circumstances here indicate that there is at least numerous disputes of material fact with respect to Brend's involvement and supervision of the workplace making summary judgement inappropriate with the degree of control and the duties owed to the workers engaged in labor on Brend's behalf to ensure that they, including Plaintiff worked in a atmosphere free from sex discrimination and sexual harassment.


## **V. Conclusion**

Defendant's for Summary Judgement should be denied because Plaintiff has adequately established sufficient facts showing that Defendant Brend was her joint employer, and that Brend was willfully ignorant of their duties to provide a workplace free of sexual harassment. Therefore, the Brend's motion for summary judgement should be denied in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        January 13, 2023

                                        DEREK SMITH LAW GROUP, PLLC
                                        *Attorneys for Claimant*

19

Seamus P. Barrett, Esq.
1 Penn Plaza, 49th Floor
New York, NY 10119
212.587.0760