UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | | |
|---|---|---|
| ANDREA TOLEDO,<br>Plaintiff,<br><br>- against -<br><br>UNIBUD RESTORATION CORP., BREND RESTORATION LLC, BREND RESTORATION SERVICES INC., PAVARINI MCGOVERN, LLC, and CARLOS URIBE, individually,<br>Defendants. | : | Index No.:<br>21-cv-882 (GBD) (SN) |

-----------------------------------------------------------------x

DEFENDANTS' REPLY TO PLAINTIFF'S COUNTERSTATEMENT OF FACTS

The Brend defendants, by their attorney, DANIEL S. PERLMAN, submit the following in reply to plaintiff's counterstatement of undisputed facts:

26. At all times material to this motion, the Brend Defendants (BREND RESTORATION LLC and BREND RESTORATION SERVICES, INC. collectively referred to herein as "BREND" and/or "Defendants") were Plaintiff's joint employer, and the former Defendant, Unibud merely acted as a labor placement agency subcontractor and payroll company, on behalf of the BREND Defendants. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. The Agreement between Brend Restoration LLC (not Brend Restoration Services Inc.) (Exhibit B to Jaworski moving affidavit) clearly sets forth Unibud's scope of work which included transporting of materials from street to work areas, installation of panels,

providing their own tools - except as excluded, keeping their own logs and other paperwork and the provision of an English speaking foreman (who would presumably, and did, oversee Unibud workers).

**27.** At all times material, Defendant CARLOS URIBE ("URIBE") was a supervisor jointly employed by Defendants, UNIBUD and BREND, and was one of Plaintiff's direct supervisors. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2).

**REPLY:** Deny. Neither Zagroba nor Zawadski state that Uribe was jointly employed. In fact they each state (at para. 5) that "the Brend project manager would supply the daily action plan to a UNIBUD foreman at the worksite." Not to a jointly employed foreman.

**28.** URIBE reported directly to BREND's foreman Walter Rosso and URIBE issued work orders to Plaintiff and her coworkers that came directly from BREND's project manager, Marek Sudol. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Rosso was not a Brend foreman. (Jaworski Reply para. 10). Neither Zagroba nor Zawadski make any such assertion. Admit that Uribe issued work order to plaintiff, etc.

**29.** Around early June 2019 Defendants assigned Plaintiff to work as a construction laborer at a construction site located at 100 Vandam Street, New York, NY, Defendants

BREND, and UNIBUD were the subcontractors. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. More precisely, Brend Restoration LLC was a subcontractor to Betons Prefabriques du Lac Inc. who contracted with the general contractor, Pavarini McGovern to supply and install precast concrete panels. (Exhibit A to Jaworski moving affidavit). Unibud was a sub-subcontractor of Brend Restoration, LLC. (Exhibit B to Jaworski moving affidavit). Brend Restoration Services Inc. had no role at all in this project. (Jaworski Reply para. 5).

30. The only control Unibud had over Plaintiff's employment was assigning her to work at the Vandam project and payroll, wherein she was paid in cash at the end of every week. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Demy. The reason Unibud was required to provide a job foreman was to supervise Unibud workers. (Exhibit B to Jaworski aff.) (Jaworski Reply at para. 12).

31. All other control over Plaintiff's work activities was directed, supervised, inspected, monitored and reviewed by BREND. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Jaworski Reply at para. 12).

.

32. BREND's project manager, Marek Sudol was present at the 100 Vandam worksite every day, all day during work hours, and conducted inspections monitoring of our work and

issued specific instructions that we were required to carry out. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny (Sudol at para. 5).

33. During BREND's project manager Mr. Sudol's monitoring and near constant inspection of our work, he would make sure we had all the materials needed to complete our work assignments, and if we did not have the materials needed to complete the tasks, he would make sure that those materials were provided to us. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Betons Prefabriques provided materials such as panels to be installed by Unibud plus associated hardware.. Unibud provided its own tools and machinery and safety equipment. (See Exhibit S to Unibud subcontract). (Jaworski reply at para. 20).

34. Several times per day, every day while Plaintiff worked at the Vandam work site, Defendant URIBE relayed work orders to Plaintiff and her coworkers directly from BREND, usually via Mr. Rosso and/or Mr. Sudol. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit except that we did not issue work orders to Unibud via Rosso. (Jaworski reply at para. 10.).

35. On at least one occasion, BREND's project manager, Mr. Sudol issued work instructions directly to Plaintiff. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny.(Sudol at para. 13).

36. On at least one occasion Plaintiff witnessed that, BREND's project manager, Mr. Sudol issued work instructions directly to one of Plaintiff's coworkers who was also assigned to the 100 Vandam project by Unibud. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Sudol at paras. 7, 12).

37. Every day Plaintiff showed up at the Vandam work site, I signed into work on a daily workers' log sheet that read: "I [foreman, Walter Rosso's handwritten name], ***Foreman for BREND***, affirm that the ***above list of employees is an accurate list of all our employees on this project today, and that all our employees*** have been through the [safety] orientation and meet all the DOB requirements to be present on this project. (Sub-Contractors are responsible for accounting for all their employees as well as all employees of their lower tiered subs.)" (emphasis added) (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit and note the quoted language makes clear that Pavarini, the general contractor, required that we be responsible and account for employees of our subs.

**38.** BREND's foreman, Walter Rosso, every day in writing, via the sign-in sheet acknowledged that Plaintiff and her coworkers were "employees" of BREND. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny that Rosso was a Brend foreman. (Jaworski reply aff. at para. 10).

**39.** All of the direct employees of BREND and all of the subcontractors assigned by Unibud, like Plaintiff, signed the same daily worker's log, that identified all of them and BREND "employees". There was no separate sign-in sheet or any distinction whatsoever between direct employees of BREND and the workers assigned to BREND by Unibud. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Inasmuch as Brend had no employees on site other than Sudol. (Jaworski reply aff. at para 15).

.

**40.** All of Plaintiff's coworkers assigned to the 100 Vandam project by Unibud, including Plaintiff, were required to obtain permission from BREND to access any and all of the project's various locations within the building. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Plaintiff and her coworkers had their own foreman and supervisor.

41. BREND personnel were the only ones who could grant us access to various work locations at the 100 Vandam worksite. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Brend had no personnel on site other than Sudol. (Jaworski reply at 10).

**42.** BREND's project manager, Marek Sudol and foreman, Walter Rosso, had the power to take any disciplinary action they saw fit, up to and including termination, against me or any of Plaintiff's coworkers, and Mr. Sudol and Mr. Rosso would instruct URIBE to carry out whatever

disciplinary actions the BREND supervisors deemed necessary. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Jaworski reply at 10, 17). ( Sudol at 12).

43. Defendant URIBE did in fact carry out Mr. Sudol's and Mr. Rosso's decisions regarding disciplinary actions toward workers. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. There is no competent evidence as to what Urbibe did or didn't do with regard to discipline of Unibud workers and Rosso was not a Brend employee. ( Jaworski reply at 17).

44. Defendant URIBE regularly communicated directly with Mr. Sudol and Mr. Rosso regarding our work assignments. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. There is no competent evidence as to what Urbie did or did not do.

45. BREND's project manager, Marek Sudol and foreman, Walter Rosso, had the power to make scheduling decisions for Plaintiff and her coworkers, including dictating which workers would work which shifts. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Rosso para. 13).

**46.** Mr. Sudol's and Mr. Rosso's scheduling decisions were carried out through them issuing scheduling decisions directly through URIBE. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Rosso para. 13).

47. Defendant URIBE was Plaintiff's direct boss and Mr. Rosso was URIBE's direct boss, and Mr. Sudol was Mr. Rosso's direct boss. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Rosso was no a Brend employee. Sudol was our project manager and not Russo's boss. (Rosso and Jaworski affs.)

48. Upon commencing the job at 100 Vandam, BREND required that Plaintiff and her coworkers attend a safety orientation training conducted in the basement of 100 Vandam. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit. Required by Pavarini. (Jaworski reply at 19).

49. BREND's project manager, Mr. Sudol was the person who conducted the safety orientation and training. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Conducted by Rosso, Unibud's employee. Jaworski Reply at 5).

50. The training was conducted by BREND and was attended by both workers directly employed by BREND and workers assigned to the 100 Vandam project by Unibud. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Brend had no workers on site other than Sudol and he did not conduct the site safety meetings or any training.. (Sudol at para. 14).

51. Every day Plaintiff worked at the 100 Vandam worksite, approximately 10-20 other workers who were directly employed by BREND also worked alongside Plaintiff and the other worked assigned to the project by Unibud to work for BREND at the worksite. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny: (Jaworski reply. at 16).

52. On a daily basis, these workers directly employed by BREND would work together with Plaintiff and other workers assigned to the worksite by Unibud to complete various work-related tasks, and vice versa. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. ( Jaworski reply at 16).

53. The workers who were assigned to the site by Unibud, worked side-by-side with the workers directly employed directly by BREND on a daily basis to help them complete the tasks they were working on. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny (Jaworski reply at 16).

54. Both BREND's direct employees and Plaintiff and her coworkers assigned by Unibud, were all required by BREND to wear the hardhats bearing BREND's logo, to wear work vests bearing BREND's logo, and to carry on our person at all times our identification and safety credentials all identifying us as BREND's workers, and we were all required to say we worked for BREND if anyone asked. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny the part about Brend direct employees.

55. BREND supplied us with these hardhats and work vests, as well as all the work materials needed to complete our tasks. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny that we provided all work materials to Unibud. See Exhibit S to subcontract (Ex.B to Jaworski aff. and Jaworski reply at 20).

56. There was no functional or meaningful difference between workers like Plaintiff, her fellow Unibud subcontractors and their coworkers directly employed by BREND, as they all regularly worked on the same work tasks interchangeably. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Jaworski reply at 16).

57. BREND's direct employees and the subcontractors assigned by Unibud all attended a work party together on the roof of 100 Vandam. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Jaworski reply at 22).

**58.** At all times material, Defendant BREND derived an economic benefit from the daily labor Plaintiff engaged in for them at 100 Vandam. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Jaworski reply at 23).

59. At all times material, Defendant BREND, their project manager, Mr. Sudol and their foreman, Walter Rosso controlled all Plaintiff's daily work activities and those of all of Plaintiff's coworkers and supervisors, including the right to fire, reassign and/or reduce Plaintiff's work hours and those of all Plaintiff's coworkers. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Jaworski reply).

60. BREND's project manager, Mr. Sudol made sure Plaintiff and her coworkers had all of the materials needed to complete their work assignments, by checking with them and monitoring them throughout each workday. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. (Jaworski reply at 13and 20).

61. Mr. Sudol's control of Plaintiff's day-to-day work activities was carried out through orders he issued to Mr. Rosso and Defendant URIBE. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny that this amounted to Sudol controlling plaintiff's day to day activities. Note that plaintiff here couples Rosso and Uribe as persons who Sudol issued instructions to.

62. Unibud and the other higher-tired contractors above BREND never directed Plaintiff's daily work activities, she only performed assigned work that was ordered, overseen and inspected by BREND, usually through Mr. Rosso and Mr. Sudol. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Brend did not assign work to plaintiff or inspect plaintiff's work per se. Sudol inspected Unibud work. Sudol at paras. 6 and 7.

63. Plaintiff's coworkers and I were instructed that BREND was our employer, and if anyone at the worksite asked who they worked for, the supervisors, including Mr. Sudol, Mr. Rosso and URIBE, told them they were required to tell anyone who asked, that they worked for BREND. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny that plaintiff and her coworkers were instructed by anyone that Brend was their employer. Jaworski aff.

64. Plaintiff's hardhat and work vest were issued to her by BREND and had BREND's corporate logo displayed prominently on them. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit.

65. Plaintiff was required to always wear the BREND hardhat and work vest while she was working on tasks at the Vandam project. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit.

66. Defendants BREND nor anyone else ever issued Plaintiff wage statements for the work she performed at 100 Vandam. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Neither admit nor deny that plaintiff was issued wage statements by Unibud. Brend had nothing to do with paying Unibud workers. Jaworski moving aff at para. 17.

67. Defendant BREND's business model depends upon its daily construction laborers and so depended on Plaintiff's and other similarly situated employees' work. Pl. Decl. ¶4; GT Decl. ¶¶

**REPLY:** Brend business model, if any, depended upon subcontractors performing their scope of work.. Jaworski moving aff at para. 5.

68. Defendant BREND set and enforced requirements related to specific procedures that employees, including Plaintiff, must adhere to and qualifications that employees, including Plaintiff, must meet. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Neither Zagroba nor Zawadski make any such assertion. And see Jaworski reply aff. At 25.

69. Defendant BREND issued Plaintiff an identification badge bearing Defendant BREND's name and corporate logo, that displayed Plaintiff's name, photo and other licensing information, which Defendant BREND, required Plaintiff to carry on her person at all times while she was at the Vandam worksite. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit.

70. BREND held themselves out as Plaintiff's employer while she worked at the Vandam worksite, and all of her supervisors told her that she worked for BREND, and that Plaintiff's supervisor, Defendant URIBE and all of the other workers who were assigned to that project location by Unibud, were told that they all worked for BREND. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Neither Zagroba nor Zawadski make any such assertion.

71. Now that Plaintiff is suing BREND for allowing Defendant URIBE, her former boss, to sexually harass her while she worked for them, and for failing in their legal obligation to provide a workplace free of discrimination and sexual harassment, BREND now claims that Plaintiff was never an "employee". (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. See Jaworski affs.

72. On a daily basis, and often multiple times per day, BREND typically through their foreman, Mr. Rosso, issued the "action plan", work commands, tasks and/or assignments directly

to Defendant URIBE via phone, text message and/or email, who then relayed those work commands, tasks and assignments to me and other laborers at the Vandam Project. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny. Rosso was a Unibud employee. Jaworski reply at 5

**73.** On a daily basis, and often multiple times per day, Defendant URIBE would update his supervisors at BREND, Mr. Sudol and Mr. Rosso, on the status of the daily "action plan", work commands, tasks and/or assignments, via phone, text message and often in person, when supervisors from BREND came to oversee and inspect the work we did. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny: Neither Zagroba nor Zawadski make any such claim. Rosso was a Unibud employee. Jaworski reply at 5.

**74.** Around June 22, 2019, Defendant URIBE sent me a text message asking, "**CAN I ASK YOU SOMETHING WITHOUT YOU TELLING ANYBODY?**" (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny knowledge or information.

75. I responded, "Of course, tell me." URIBE then asked me, "**WHAT COLOR ARE THOSE PANTIES?**" (Pl. Decl. ¶¶ 7-51; SPB Decl. Ex. 2)

**REPLY:** Deny knowledge or information.

76. Shocked and insulted I complained to URIBE, "The relationship between you and I is clearly work. I think that these kinds of questions are too much." (Pl. Decl. ¶¶ 7-51; and SPB Decl. 2)

**REPLY:** Deny knowledge or information.

77. Around September 4, 2019, I sent a text message to UNIBUD's owner ZAWADSKI, who assigned me to work for BREND, complaining about the vulgar and inappropriate text messaged that she and other female co-workers have been receiving from Defendant URIBE. (Pl. Decl. ¶¶ 7-51; and SPB Decl. 2)

**REPLY:** Deny knowledge or information and deny that Zawadski assigned plaintiff to work for Brend. See Jaworski moving aff. at 5.

78. Up through around September 2019, I continued to receive harassing text messages and phone calls from URIBE at inappropriate hours of the night and early morning between 10:30 PM and 4:30 AM. (Pl. Decl. ¶¶ 7-51; and SPB Decl. 2)

**REPLY:** Deny knowledge or information See Jaworski reply at para. 27.

79. Defendants failed to take any corrective or remedial action to address the persistent and ongoing pattern of sexual harassment that I brought to their attention. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Deny this unsupported allegation.. This is the first time anyone has alleged that Brend was made aware of Uribe's alleged actions. Admit that Brend took no steps to address Uribe's behavior of which it has no knowledge.. Jaworski reply at para. 27.

80. While they provided Plaintiff with general workplace safety information, Defendant BREND never provided any information on who she should complain to if a supervisor was sexually harassing her. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit but note that Sudol was present at the job site on a daily basis. Sudol at para. 9 and 17.

81. BREND did not promulgate any workplace policy of any kind regarding discrimination or sexual harassment. (Pl. Decl. ¶¶ 7-51; GT Decl. ¶¶ 5-40; KZ Decl. ¶¶ 1-10; RZ Decl. ¶¶ 1-10; and SPB Decl. Ex. 1 and 2)

**REPLY:** Admit.

**82.** Plaintiff was terrified that when Defendant URIBE found out she complained about his sexual harassment, she would lose her job, or worse, he would attack her at work or outside of work. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Neither admit nor deny how plaintiff felt.

83. Because Defendant BREND never provided Plaintiff and her coworkers with information on their policies against workplace discrimination or sexual harassment, she had no idea what to do, and she felt she had no other option than to leave that job, so that she would no longer be subjected to my supervisor's unwanted and degrading sexual comments. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny. Plaintiff complained to Unibud owners and could just as easily have complained to Sudol . Sudo. at 17.

84. Plaintiff had no other job at the time she worked for Defendant BREND through her placement in that job by Unibud. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny this self-serving conclusory assertion. Jaworski affs.

85. Plaintiff worked exclusively at the Vandam project for BREND through their subcontractor, Unibud and was paid in cash by Unibud. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny that plaintiff worked for Brend. Jaworski affs

.

86. Plaintiff's symptoms include, sleep disturbance, helplessness, isolation, trouble sleeping at night, functional decline, nervousness, decreased energy, poor motivation, hopelessness, worthlessness, and numerous other physiological manifestations of emotional distress. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny knowledge or information re plaintiff's self-serving statements of her symptoms.

87. As a result of Defendant BREND's actions and failures to act, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed and emotionally distressed. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny knowledge or information re plaintiff's self-serving statements of her symptoms or that any of her symptoms are due to Brend actions or failures to act.

88. As a result of the acts, omissions and conduct taken by Defendant BREND, I have suffered and will continue to suffer the loss of income, the loss of a salary, commissions, bonuses, benefits and other compensation which such employment entails. I have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny plaintiff's self-serving assertions.

89. BREND had a duty to make sure I was provided a workplace where I would be free of discrimination and sexual harassment from Defendant URIBE. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny plaintiff's self-serving assertions and beg leave to refer all questions of law to the Court upon the trial of this action.

90. BREND failed at that duty. (Pl. Decl. ¶¶ 7-51)

**REPILY:** Deny plaintiff's assertion and beg leave to refer all questions of law to the Court upon the trial of this action.

91. BREND had the legal responsibility to have policies in place to make sure that if Plaintiff was being subjected to workplace sexual harassment by one of her supervisors, she could report it and it would be remedied. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny plaintiff's assertion and beg leave to refer all questions of law to the Court upon the trial of this action.

92. BREND failed at that responsibility. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny plantiff's assertion and beg leave to refer all questions of law to the Court upon the trial of this action.

93. BREND willfully ignored the workplace sexual harassment that Plaintiff was subjected to by her supervisor and provided no reasonable means for her to report it, nor a reasonable policy to prevent it. (Pl. Decl. ¶¶ 7-51)

**REPLY:** Deny. Brend was unaware of Uribe's alleged acts which are asserted to have occurred away from the work place. Jaworski and Sudol affs.

Dated: Scarsdale, New York
February 10, 2023

DANIEL S. PERLMAN
Attorney for Brend Defendants
142 Garth Road 1T
Scarsdale, NY 10583
(212) 684-1466

\